IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

Plaintiff,

v.

[16] ANTONIO ORTIZ-APONTE

Defendant.

CRIM. NO.: 10-00251 (SCC)

**OPINION AND ORDER**

Pending before the Court is Defendant Antonio Ortiz-Aponte's ("Defendant Ortiz-Aponte") *pro se* petition for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] *See* Docket No. 4633. The Government

---

[1] In connection with his petition at Docket Number 4633, Defendant Ortiz-Aponte filed three motions reiterating and supplementing his initial petition. *See* Docket Nos. 4644, 4690 and 4710. The motions also requested that the Court issue an Order granting his initial petition. *Id.* The Court acknowledges that, in Defendant Ortiz-Aponte's petition at Docket Number 4690, a reference to the term "home confinement" was made. Other than the mere mention of the term, no such request has been articulated and raised before this Court by Defendant Ortiz-Aponte. Moreover, after having reviewed all of the submissions related to Defendant Ortiz-Aponte's petition, the Court noticed that there is no indication as to whether the Bureau of Prisons ("BOP") has already

opposed the same. Docket No. 4640. And a timely Reply

followed. Docket No. 4658. Furthermore, the Court instructed

the United States Probation Office ("USPO") to provide its

input as to Defendant Ortiz-Aponte's petition. *See* Docket No.

4709. The USPO complied with the Court's directive. *See*

Docket No. 4713. For the reasons set forth below, Defendant

---

considered—on its own accord, or at the behest of Defendant Ortiz-Aponte—and denied the possibility of home confinement pursuant to 18 U.S.C. § 3624(c)(2) and the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) ("CARES Act"). More fundamentally, even if Defendant Ortiz-Aponte's mention of the term "home confinement"—with nothing more—were to be construed as a request for this Court to order the BOP to place him in home confinement pursuant to the CARES Act, such request is misplaced for the Court lacks jurisdiction to issue such an order, rather, it may only **recommend** the BOP to consider taking such action. 18 U.S.C. § 3621(b); *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) (explaining that "[a] sentencing court can recommend that the BOP place an offender in a particular facility or program . . . [b]ut decision making authority rests with the BOP."). At this time, the Court finds that no request for a recommendation for home confinement has been made by Defendant Ortiz-Aponte. The Court reads the mention of "home confinement" as part of Defendant Ortiz-Aponte's request for a reduced sentence to time-served and that he be released to his home. Therefore, the motions at Docket Numbers 4644 and 4690—reiterating the initial petition and requesting an order as to the same—are hereby NOTED.

Ortiz-Aponte's petition at Docket Number 4633 is **DENIED WITHOUT PREJUDICE.**

## I.  Analysis

Defendant Ortiz-Aponte anchors his petition for compassionate release to his understanding that, if he were to remain imprisoned at FCI Fort Dix his death would be imminent in light of the coronavirus ("COVID-19") pandemic's toll on the aforementioned correctional facility coupled with his underlying health conditions. *See* Docket No. 4633. The Government opposes Defendant Ortiz-Aponte's petition on the grounds that he has failed to identify "extraordinary circumstances" that warrant the relief afforded by § 3582 (c)(1)(A)(i). *See* Docket No. 4640 at pgs. 8-10.

When considering  a motion for compassionate release under § 3582 (c)(1)(A)(i), which was filed by a defendant—instead of by the Bureau of Prisons ("BOP")—a Court must first inquire as to whether the defendant has satisfied the procedural administrative prerequisite of having raised his grievance before the BOP and that 30 days transpired after the

BOP received the grievance but failed to address the same. *Id.* at § 3582 (c)(1)(A). Here, the Government concedes that Defendant Ortiz-Aponte has satisfied the aforesaid administrative exhaustion requirement. *See* Docket No. 4640 at pg. 8. The Court thus turns to the merits of Defendant Ortiz-Aponte's petition and whether he has set forth "extraordinary and compelling reasons [that] warrant such a reduction" to his sentence. *See* 18 U.S.C. § 3582 (c)(1)(A)(i).

Defendant Ortiz-Aponte sustains that he suffers from serious respiratory issues—attributed to the partial functioning of his right lung—chronic asthma and is obese. *See* Docket Nos. 4633, 4644, and 4690. In light of these conditions, if he were to contract COVID-19, Defendant Ortiz-Aponte argues that his recovery would be unlikely. *Id.* Defendant Ortiz-Aponte is currently 39 years old. *See* Docket No. 1039 at pg. 12.[2]

---

[2] Listing his date of birth as February 13, 1982.

In its Opposition, the Government counters that
Defendant Ortiz-Aponte has failed to provide supporting
documentation regarding his alleged pre-existing conditions
and therefore has failed to establish "extraordinary and
compelling" reasons which would call for his compassionate
release. *See* Docket No. 4640 pgs. 8-10. The Government also
pointed to the efforts employed by the BOP to address the
COVID-19 pandemic. *Id.* at pgs. 1-5. On January 8, 2021, the
Court ordered the Government to produce Defendant Ortiz-
Aponte's medical records by January 15, 2021. *See* Docket No.
4692. The Government complied with the Court's directive
and produced the same on January 14, 2021. *See* Docket No.
4697.

After an exhaustive review of the medical records the
Court was able to corroborate that, as of January 1, 2021,
Defendant Ortiz-Aponte has been diagnosed and is currently
being treated for the following conditions: (1) dental caries;
(2) gastro-esophageal reflux disease with esophagitis; (3)
gastric ulcer without hemorrhage or perforation; (4)

unspecified breathing abnormalities; and (5) COVID-19.[3] *See* Docket No. 4697-1 at pg. 42.  The medical records also denote that, Defendant Ortiz-Aponte has multiple gun-shot wound scars in his right lung.[4] *Id.* at pg. 14. However, the medical records do not include a diagnosis regarding Defendant Ortiz-Aponte's alleged obesity and his "unspecified breathing abnormalities" have not been officially diagnosed as asthma.[5]

---

[3] While still listed as a "current condition" in Defendant Ortiz-Aponte's medical records, as expanded upon below, the medical staff at FCI Fort Dix determined that, due to being asymptomatic to the virus, he no longer required the staff's immediate supervision and was therefore instructed to report back to the medical staff if he developed symptoms.

[4] The Court also considered Defendant Ortiz-Aponte's Amended Pre-Sentencing Report as part of its analysis. *See* Docket No. 1039. Under the "Physical Condition" subsection of the Amended PSR, Defendant Ortiz-Aponte stated that he was shot 14 times in his abdomen, right leg, head, neck and elbows in 2007. *Id.* at ¶ 80. While he was in a comma for 2 months and remained at the hospital for an additional 7 months, he expressed that he had fully recovered from the wounds and considered himself a "healthy man". *Id.*

[5] On December 15, 2020 his height was listed at 72 inches and he weighed in at 210 pounds. *See* Docket No. 4697-1 at pgs. 7-2.

Regarding the shortness of breath symptoms, during a medical evaluation that took place on August 4, 2020, Defendant Ortiz-Aponte stated that the same had allegedly begun six months prior.[6] *Id.* at pg. 13. While not listed under current conditions, the notes from the medical exam performed on August 4, 2020—which was followed up by a subsequent examination on December 15, 2020—show that a provisional diagnosis of atelectasis was made regarding Defendant Ortiz-Aponte's right lung due to an elevated right hemidiaphragm. *Id.* at pgs. 9 and 14. He was also provisionally diagnosed with sleep apnea during a June 1, 2020 medical examination as well as being tachycardic during the December 15, 2020 examination. *Id.* at pg. 9, 30. Additional comments from the December 15, 2020 medical examination

---

[6] It is worth noting that, the Government produced Defendant Ortiz-Aponte's medical records from 2010 until January 2021. During the Court's review of the same, we noticed that before Defendant Ortiz-Aponte's voiced his concerns regarding his shortness of breath symptoms as described in his August 4, 2020 medical examination, the medical records solely appeared to memorialize Defendant Ortiz-Aponte's concerns regarding a fractured ankle, a toe injury, pulpitis, caries and gastrointestinal ailments which were treated or for which he is currently receiving on-going treatment.

inform that that the evaluating physician heard "crackles" in Defendant Ortiz-Aponte's left lung. *Id.* at pg. 8. Nevertheless, Defendant Ortiz-Aponte expressed improvement since having been prescribed an inhaler and additional medication to treat his shortness of breath symptoms. *Id.* at pg. 7. Another note from the same examination reflects that Defendant Ortiz-Aponte was scheduled for a routine computerized tomography—otherwise referred to as a CT scan—of his chest and abdomen, to be performed on or around January 29, 2021. *See* Docket No. 4697-1 at pg. 9.

The medical records also reveal that on December 22, 2020, Defendant Ortiz-Aponte was placed in "exposure quarantine" and was tested for COVID-19 the next day. *Id.* at pgs. 6, 53. Defendant Ortiz-Aponte's results returned a positive diagnosis for COVID-19. *Id.* at pg. 53. Subsequently, he was placed in isolation. *Id.* at pg. 2. The Centers for Disease Control and Prevention ("CDC") has identified several medical conditions which may place an individual at a higher risk of severe illness if they were to contract COVID-19. According to the CDC, moderate to severe asthma is currently

deemed as a condition that might increase the risk of severe
COVID-19 related illnesses. Likewise, chronic lung disease—
which is listed as including scarred lung tissue—also falls
under the conditions which might increase the risk of severe
COVID-19 related illnesses. *See People with Certain Medical
Conditions,* CTRS. FOR DISEASE CONTROL AND PREVENTION,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-with-medical-conditions.html                    (last
updated Mar. 15, 2021).  Albeit having tested positive for the
novel virus, on January 1, 2021, the medical staff at FCI Fort
Dix jotted down in Defendant Ortiz-Aponte's medical records
that he denied experiencing "COVID like symptoms". *See*
Docket No. 4697-1 at pg. 2. Later that day, the medical staff at
FCI Fort Dix determined that Defendant Ortiz-Aponte was no
longer in need of daily medical treatment in connection with
his COVID-19 diagnosis. *Id.* at pgs. 1-2. Defendant Ortiz-
Aponte was, however, instructed to report to the medical staff
if he developed any symptoms. *Id.* His oxygen saturation
reading during his January 1, 2021 evaluation was at 99% and
his temperature was recorded at 97.6 Fahrenheit. *Id.* at 1.

Indeed, it appears that Defendant Ortiz-Aponte's bout with COVID-19 did not result in a fatal outcome. Nevertheless, on January 28, 2021, Defendant Ortiz-Aponte filed an Informative Motion relaying some of his medical records and restating his position as to the dire conditions at FCI Fort Dix and the purported mishandling of the pandemic by the correctional facility. *See* Docket No. 4710. Defendant Ortiz-Aponte underscores that officials at FCI Fort Dix have addressed the situation with deliberate indifference. *Id.* at pg. 2. Therefore, in addition to considering Defendant Ortiz-Aponte's pre-existing conditions as part of its analysis to determine whether Defendant Ortiz-Aponte has set forth "extraordinary and compelling reasons", the Court has also taken into account the situation at the correctional facility where he is currently incarcerated.[7]

---

[7] 18 U.S.C. § 3582(c) mandates, *inter alia*, that if the Court is to reduce a sentence, such reduction must be in accordance with applicable policy statements issued by the Sentencing Commission. But the Policy Statement in the Guidelines Manual which addresses "extraordinary and compelling" reasons under § 3582(c), namely, U.S.S.G. § 1B1.13, has not been updated since the amendments set forth by the First Step Act ("FSA"). The FSA amended § 3582(c) such that defendants could move for

The correctional facility in question here, as repeatedly noted, is FCI Fort Dix. In his submissions before the Court, Defendant Ortiz-Aponte relays that FCI Fort Dix has allegedly failed to comply with physical distancing measures, for he is currently housed in a cell along with 12 inmates. *See* Docket No. 4690. Moreover, he describes the arrival of inmates from Fort Elkin, a correctional facility which faced multiple COVID-19 outbreaks of its own, into FCI Fort Dix. *See* Docket Nos. 4633, 4690. And alleges that, after having tested positive for COVID-19 he was "forced to self heal and endure extreme pain with little to [no] medical care[.]" *See* Docket No. 4710 at pg. 2.

relief under this statute after having exhausted all administrative remedies. Before the amendment, only the Director of the BOP could file such motions on behalf of a defendant. However, since the passing of the FSA, several circuits—including the Second, Fourth, Sixth and Seventh—have stated that district courts could consider additional elements that may be categorized as "extraordinary and compelling" outside of those delineated in § 1B1.13 when a § 3582(c) motion is filed by a defendant. *See United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020); *United States v. Jones,* 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn,* 980 F. 3d 1178 (7th Cir. 2020); and *United States v. Brooker,* 976 F.3d 228 (2nd Cir. 2020). While the First Circuit has yet to issue an opinion regarding this matter, here, the Court will consider the current situation at FCI Fort Dix as part of its analysis.

Sister courts have highlighted the grim situation at FCI Fort Dix as a result of the COVID-19 pandemic, particularly during the final months of 2020. *See United States v. Rodriguez*, No. 16-CR-07, 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020) (holding that "[c]onditions at [Fort Dix] appear to present serious risks both of spread of the virus and of inadequate medical care for those who have been infected."); *United States v. Staats*, Crimnal No. 17-461-1, 2020 WL 6888224 at * 2-3 (E.D. Pa. Nov. 24, 2020) (highlighting that while there were 0 reported COVID-19 cases in Fort Dix on or around October 2020, as of November 2020, Fort Dix was in the midst of an "uncontrolled outbreak", therefore, even if an inmate tested positive and was asymptomatic, the prospect of re-infection remained high.). Nevertheless, the bleak panorama that loomed over FCI Fort Dix during the final months of 2020, appears to have been addressed, for the infection rate has decreased. As of March 15, 2021, the BOP reports 21 confirmed cases of inmates and 39 staff members who have tested positive for COVID-19 at FCI fort Dix. *See COVID-19 Cases*,                    FED.                    BUREAU                    PRISONS,

https://www.bop.gov/coronavirus/ (last updated Mar. 15, 2021). Meanwhile, 1,815 inmates and 47 staff members have recovered from the virus. *Id.* The BOP webpage also reveals that the COVID-19 vaccination process, for both inmates and staff, is well underway at various facilities, including FCI Fort Dix, where 183 staff members and 161 inmates have already been inoculated. *See COVID-19 Vaccine Implementation*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 15, 2021).

The Court recognizes the dangers posed by the on-going pandemic. However, here, the medical records reflect that, Defendant Ortiz-Aponte was asymptomatic to COVID-19, is being treated for his underlying medical conditions and is responding positively to the prescribed course of treatment. Furthermore, the situation at FCI Fort Dix appears to be improving. Accordingly, at this time, the Court finds that, Defendant Ortiz-Aponte has not set forth "extraordinary and compelling reasons" that warrant relief under 18 U.S.C. § 3582 (c)(1)(A)(i).

Lastly, the Court points out that the USPO did not recommend that Defendant Ortiz-Aponte's petition for compassionate release be granted.[8] *See* Docket No. 4713. The USPO highlighted several disciplinary incidents in addition to Defendant Ortiz-Aponte's criminal history in support of its position. *Id.* at pgs. 6-9.

## II. Conclusion

Defendant Ortiz-Aponte's petition at Docket Number 4633 is **DENIED WITHOUT PREJUDICE.** The motions at Docket Numbers 4644, 4690 and 4710 were **NOTED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of March 2021.

S/SILVIA CARRENO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

[8] Per the USPO's motion, Defendant Ortiz-Aponte has served 58.1% of his full term and 64.6% of his statutory term. *See* Docket No. 4713 at pg. 3.